1

2

3

4

**UNITED STATES DISTRICT COURT**

5

**DISTRICT OF NEVADA**

6

\* \* \*

7

ROBERT J. MILLER,

Case No. 2:17-cv-02613-JAD-BNW

8

Plaintiff,

**REPORT AND RECOMMENDATION**

9

v.

10

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

11

12

Defendant.

13

14          The case involves review of an administrative action by the Commissioner of Social

15   Security ("Commissioner") denying Robert Miller's (Plaintiff's) application for disability

16   insurance benefits under Titles II and XVI of the Social Security Act. The court reviewed

17   Plaintiff's Motion for Reversal and/or Remand (ECF No. 18), filed April 27, 2018, and

18   Defendant's Cross Motion to Affirm and Opposition to Plaintiff's Motion for Reversal and/or

19   Remand (ECF Nos. 19, 20), filed May 25, 2018. Plaintiff did not file a reply. This matter was

20   referred to the undersigned magistrate judge on May 6, 2019 for a report of findings and

21   recommendations under 28 U.S.C. § 636(b)(1)(B)-(C) and Local Rule IB 1-4.

22   **I.       BACKGROUND**

23            **A.       Procedural History**

24          In September 2013, Plaintiff applied for disability insurance benefits and supplemental

25   security income under Titles II and XVI of the Act, alleging an onset date of October 1, 2012.

26   AR[1] 273, 275. The Commissioner denied Plaintiff's claims initially and upon reconsideration. AR

27

28   [1] AR refers to the Administrative Record in this matter. (Notice of Manual Filing (ECF No. 11).)

189-93, 196-201. The Administrative Law Judge (ALJ) held hearings on October 20, 2015, and June 6, 2016. AR 39-82, 83-123. On September 14, 2016, the ALJ issued a decision finding Plaintiff was not disabled. AR 19-38. On November 14, 2016, Plaintiff requested that the Appeals Council review the ALJ's decision. AR 271-72. The Appeals Council denied this request on August 15, 2017, making the ALJ's decision the Commissioner's final decision. AR 1-6. On October 6, 2017, Plaintiff commenced this action for judicial review under 42 U.S.C. §§ 405(g). (See ECF No. 1.)

**B.    The ALJ Decision**

The ALJ followed the five-step sequential evaluation process set forth in 20 C.F.R. §§ 404.1520 and 416.920.

At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity since October 1, 2012. AR 24.

At step two, the ALJ found that Plaintiff had the following severe impairments: degenerative disc disease of the lumbar spine, congenital nystagmus, and right knee pain. *Id.*

At step three, the ALJ determined Plaintiff did not have an impairment or combination of impairments that met or medically equaled an impairment listed in 20 C.F.R., Part 404, Subpt. P, App. 1 (the listings). AR 27.

Next, the ALJ found that Plaintiff retained the residual functional capacity (RFC) to lift and/or carry 25 pounds occasionally, 20 pounds frequently; stand and/or walk for four hours in an 8-hour workday and sit for six hours in an 8-hour workday. The ALJ found that Plaintiff could not occasionally climb ladders, ropes, or scaffolds, but could occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. The ALJ further found that Plaintiff had limited depth perception for distance and speed and needed to avoid concentrated exposure to vibrations and hazards. Finally, the ALJ found that Plaintiff may need a cane to walk on uneven surfaces and for prolonged distances but is able to carry small objects in his other hand. *Id.*

At step four, the ALJ found that Plaintiff could not perform past relevant work. AR 30.

At step five, and with the assistance of the vocational expert, the ALJ found that there were jobs existing in significant numbers that someone with Plaintiff's vocational profile could

perform. AR 31-32. The ALJ therefore found Plaintiff "not disabled" as defined in the Act. AR 32.

## II.    DISCUSSION

### A.    Standard of Review

Administrative decisions in social security disability benefits cases are reviewed under 42 U.S.C. § 405(g). *See Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002). Section 405(g) states:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action . . . brought in the district court of the United States for the judicial district in which the plaintiff resides.

42 U.S.C. § 405(g). The court may enter "upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." *Id.* The Ninth Circuit reviews a decision affirming, modifying, or reversing a decision of the Commissioner de novo. *See Batson v. Commissioner*, 359 F.3d 1190, 1193 (9th Cir. 2004).

The Commissioner's findings of fact are conclusive if supported by substantial evidence. *See* 42 U.S.C. § 405(g); *see Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1052 (9th Cir. 2006). However, the Commissioner's findings may be set aside if they are based on legal error or not supported by substantial evidence. *See Ukolov v. Barnhart*, 420 F.3d 1002, 1004 (9th Cir. 2005); *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). The Ninth Circuit defines substantial evidence as "more than a mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995); *see also Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). In determining whether the Commissioner's findings are supported by substantial evidence, the court "must review the administrative record as a whole, weighing both the evidence that supports and the evidence that detracts from the Commissioner's conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *see also Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996).

Under the substantial evidence test, findings must be upheld if supported by inferences reasonably drawn from the record. *Batson*, 359 F.3d at 1193. When the evidence will support more than one rational interpretation, the court must defer to the Commissioner's interpretation. *See Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005); *Flaten v. Sec'y of Health and Human Serv.*, 44 F.3d 1453, 1457 (9th Cir. 1995). Consequently, the issue before the court is not whether the Commissioner could reasonably have reached a different conclusion, but whether the final decision is supported by substantial evidence. It is incumbent on the ALJ to make specific findings so that the court does not speculate as to the basis of the findings when determining if the Commissioner's decision is supported by substantial evidence. Mere cursory findings of fact without explicit statements as to what portions of the evidence were accepted or rejected are insufficient. *Lewin v. Schweiker*, 654 F.2d 631, 634 (9th Cir. 1981). The ALJ's findings "should be as comprehensive and analytical as feasible and, where appropriate, should include a statement of subordinate factual foundations on which the ultimate factual conclusions are based . . . ." *Id.* (citing *Baerga v. Richardson*, 500 F.2d 309, 312 (3d Cir. 1974), cert. denied, 420 U.S. 931 (1975).).

### B.    Disability Evaluation Process

The individual seeking disability benefits has the initial burden of proving disability. *Roberts v. Shalala*, 66 F.3d 179, 182 (9th Cir. 1995). To meet this burden, the individual must demonstrate the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected . . . to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). More specifically, the individual must provide "specific medical evidence" in support of his claim for disability. 20 C.F.R. § 404.1514. If the individual establishes an inability to perform his prior work, then the burden shifts to the Commissioner to show that the individual can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

The ALJ follows a five-step sequential evaluation process in determining whether an individual is disabled. *See generally* 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). If at any step the ALJ determines that he can make a finding of disability or nondisability,

a determination will be made, and no further evaluation is required. *See* 20 C.F.R. §

404.1520(a)(4); *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003). Step one requires the ALJ to

determine whether the individual is engaged in substantial gainful activity (SGA). 20 C.F.R. §

404.1520(b). SGA is defined as work activity that is both substantial and gainful; it involves

doing significant physical or mental activities usually for pay or profit. *Id.* § 404.1572(a)-(b). If

the individual is engaged in SGA, then a finding of "not disabled" is made. *See Barnhart*, 540

U.S. at 24. If the individual is not engaged in SGA, then the analysis proceeds to step two. *See id.*

Step two addresses whether the individual has a medically determinable impairment that is severe

or a combination of impairments that significantly limits him from performing basic work

activities. 20 C.F.R. § 404.1520(c). An impairment or combination of impairments is not severe

when medical and other evidence establishes only a slight abnormality or a combination of slight

abnormalities that would have no more than a minimal effect on the individual's ability to work.

*Id.* § 404.1521; *see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017); SSR 85-28, 1985 WL

56856 (Jan. 1, 1985).[2] If the individual does not have a severe medically determinable impairment

or combination of impairments, then a finding of "not disabled" is made. If the individual has a

severe medically determinable impairment or combination of impairments, then the analysis

proceeds to step three.

Step three requires the ALJ to determine whether the individual's impairment or

combination of impairments meet or medically equal the criteria of an impairment listed in 20

C.F.R. Part 404, Subpart P, Appendix 1. 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526. If the

individual's impairment or combination of impairments meet or equal the criteria of a listing and

the duration requirement (20 C.F.R. § 404.1509), then a finding of "disabled" is made. 20 C.F.R.

§ 404.1520(h). If the individual's impairment or combination of impairments does not meet or

---

[2] SSRs constitute the SSA's official interpretation of the statute and regulations. *See Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1224 (9th Cir. 2009); *see also* 20 C.F.R. § 402.35(b)(1). They are entitled to some deference if they are consistent with the Social Security Act and regulations. *Id.* at 1223-24 (finding ALJ erred in disregarding SSR 82-41).

equal the criteria of a listing or meet the duration requirement, then the analysis proceeds to step four.

Before moving to step four, however, the ALJ must first determine the individual's residual functional capacity (RFC), which is a function-by-function assessment of the individual's ability to do physical and mental work-related activities on a sustained basis despite limitations from impairments. *See* 20 C.F.R. § 404.1520(e); *see also* SSR 96-8p, 1996 WL 374184 (July 2, 1996). In making this finding, the ALJ must consider all the relevant evidence, such as all symptoms and "the extent to which the symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. § 404.1529(a*); see also* SSR 16-3p, 2017 WL 5180304 (Oct. 25, 2017). To the extent that statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the ALJ must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. The ALJ must also consider opinion evidence in accordance with the requirements of 20 C.F.R. § 404.1527 and 20 C.F.R. § 416.927.

Step four requires the ALJ to determine whether the individual has the RFC to perform his past relevant work (PRW). *See* 20 C.F.R. § 404.1520(f). PRW means work performed either as the individual actually performed it or as it is generally performed in the national economy within the last 15 years or 15 years before the date that disability must be established. *See* 20 C.F.R. §§ 404.1560(b), 404.1565(a). In addition, the work must have lasted long enough for the individual to learn the job and perform a SGA. *Id.* §§ 404.1560(b), 404.1565(a). If the individual has the RFC to perform his past work, then a finding of "not disabled" is made. *Id.* § 404.1560(b)(3). If the individual is unable to perform any PRW or does not have any PRW, then the analysis proceeds to step five.

The fifth and final step requires the ALJ to determine whether the individual can do any other work considering his RFC, age, education, and work experience. 20 C.F.R. § 404.1520(g). If he can do other work, then a finding of "not disabled" is made. Although the individual generally continues to have the burden of proving disability at this step, a limited burden of going forward with the evidence shifts to the Commissioner. The Commissioner is responsible for

providing evidence that demonstrates that other work exists in significant numbers in the national

economy that the individual can do. *Yuckert*, 482 U.S. at 141-42.

### C.    Analysis

#### 1.    Plaintiff's Appealed Symptom Claims

Plaintiff faults the ALJ for failing to rely on clear and convincing reasons supported by

substantial evidence in discrediting his symptom claims. (ECF No. 18 at 3-11.) Plaintiff argues

that the ALJ relied on the following three reasons to find him not entirely credible, and that each

reason is flawed: (1) a boilerplate statement that Plaintiff's symptom claims are not entirely

consistent with the evidence in the record (*id.* at 6-7); (2) insufficient objective medical evidence

substantiating Plaintiff's symptom claims (*id.* at 7-9); and (3) Plaintiff's allegedly conservative

medical treatment (*id* at 10). Accordingly, Plaintiff argues that the court should remand for an

award of immediate benefits or, in the alternative, a correction of legal errors. (*Id.* at 11-12.)

The Commissioner responds by arguing that the ALJ properly evaluated Plaintiff's

subjective complaints of pain. (ECF No. 19 at 4.) The Commissioner acknowledges that the ALJ

may not reject a plaintiff's symptom claims based solely on a lack of substantiation in the medical

evidence. (*Id.* at 6.) The Commissioner points out, however, that in this case, the ALJ also

discredited Plaintiff's symptom claims based on inconsistencies between these claims and his

conservative treatment and daily activities, and the fact that Plaintiff did not quit his last job due

to his symptoms but instead was laid-off. (*Id.* at 8-10.) Accordingly, the Commissioner argues

that the ALJ gave clear and convincing reasons (supported by substantial evidence) for

discrediting Plaintiff's symptom claims. (*Id*. at 10.)

#### 2.    When Symptom Claims May Be Rejected

An ALJ engages in a two-step analysis to determine whether a claimant's testimony

regarding subjective pain or symptoms is credible.[3] "First, the ALJ must determine whether there

---

[3] SSR 96-7p, the regulation that governed credibility determinations at the time of this decision, was superseded by SSR 16-3p in March 2016. SSR 16-3p "eliminat[es] the use of the term 'credibility' .... [to] clarify that subjective symptom evaluation is not an examination of an individual's character." SSR 16-3p, available at 2016 WL 1119029, at *1 (Mar. 16, 2016). However, both regulations require an ALJ to consider the same factors in evaluating the intensity,

is objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012) (internal quotation marks omitted). "The claimant is not required to show that [the claimant's] impairment could reasonably be expected to cause the severity of the symptom [the claimant] has alleged; [the claimant] need only show that it could reasonably have caused some degree of the symptom." *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (internal quotation marks omitted).

Second, "[i]f the claimant meets the first test and there is no evidence of malingering, the ALJ can only reject the claimant's testimony about the severity of the symptoms if [the ALJ] gives 'specific, clear and convincing reasons' for the rejection." *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2014) (internal citations and quotations omitted). "General findings are insufficient; rather, the ALJ must identify what testimony is not credible and what evidence undermines the claimant's complaints." *Id*.; *Thomas*, 278 F.3d at 958 ("[T]he ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony.").

In making an adverse credibility determination, the ALJ may consider, *inter alia*, (1) the claimant's reputation for truthfulness; (2) inconsistencies in the claimant's testimony or between his testimony and his conduct; (3) the claimant's daily living activities; (4) the claimant's work record; and (5) testimony from physicians or third parties concerning the nature, severity, and effect of the claimant's condition. *Thomas*, 278 F.3d at 958-59.

The court is constrained to affirming the ALJ decision on a ground that the ALJ invoked in making his/her decision. *See Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007); *Stout*, 454 F.3d at 1054. The court cannot affirm the ALJ's credibility decision based on evidence that the ALJ did not discuss. *Connett v. Barnhart*, 340 F.3d 871, 874 (9th Cir. 2003).

### 3.     Whether the ALJ Erred in Rejecting Plaintiff's Symptom Claims

---

persistence and limiting effects of an individual's symptoms. *See id*. at *7; SSR 96-7p, 1996 WL 374186, at *3 (July 2, 1996).

1    Here, Plaintiff argues that the ALJ relied on three flawed reasons to find his symptom

2    claims not entirely credible. (ECF No. 18 at 7-11.)

3    First, Plaintiff faults the ALJ for making a boilerplate statement that Plaintiff's symptom

4    claims are not entirely consistent with the evidence in the record, asserting that the "conclusory

5    statement of the ALJ in this matter is wholly insufficient." (*Id.* at 6-7.) Had this statement been

6    the only statement the ALJ made about Plaintiff's credibility, Plaintiff would likely be correct that

7    this would be insufficient. However, since the ALJ explained its reasons for discrediting

8    Plaintiff's symptom claims (as discussed in more detail below), it was not error for the ALJ to

9    provide a succinct sentence conveying her conclusion.

10    Second, Plaintiff faults the ALJ for allegedly rejecting Plaintiff's symptoms claims

11    because they were not sufficiently supported by objective medical evidence in the record. (ECF

12    No. 18 at 7-9.) Had the ALJ rejected Plaintiff's symptom claims based solely on this ground, this

13    may also have been error. *See Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (ALJ may

14    not discredit a claimant's symptom testimony and deny benefits solely because the degree of

15    symptoms alleged is not supported by objective medical evidence); *Bunnell v. Sullivan*, 947 F.2d

16    341, 346-47 (9th Cir. 1991) (same); *Fair v. Bowen*, 885 F.2d 597, 601 (9th Cir. 1989) (same).

17    Again, however, the ALJ provided additional reasons for finding Plaintiff not entirely credible.

18    And because objective medical evidence is a relevant factor in determining the severity of a

19    claimant's symptoms and their disabling effects, it was not error for the ALJ to consider this.

20    *Rollins*, 261 F.3d at 857; 20 C.F.R. §§ 404.1529(c)(2), 416.929(c)(2).

21    Third, Plaintiff faults the ALJ for discrediting his symptom claims based on the

22    conservative nature of his treatment. (ECF No. 18 at 10.) Evidence of "conservative treatment" is

23    sufficient to discount a claimant's testimony regarding the severity of an impairment. *Parra v.

24    Astrue*, 481 F.3d 742 (9th Cir. 2007). Plaintiff does not seem to disagree with the law on this

25    point, but argues that the ALJ (1) did not cite any medical evidence that demonstrates that

26    Plaintiff's treatment as been "conservative;" (2) did not point to any more rigorous treatment that

27    doctors wanted Plaintiff to complete; and (3) is simply wrong because Plaintiff was taking

28

1   narcotics, which, according to Plaintiff, is not a form of conservative treatment. (ECF No. 18 at

2   10.)

3          Plaintiff's arguments are unpersuasive. As an initial matter, the ALJ cited substantial

4   medical evidence demonstrating that Plaintiff's treatment has been conservative. (*See, e.g.*, AR

5   28, 29 (noting that Plaintiff's back pain was treated with just 10 mg of Lortab three times a week,

6   and Plaintiff's allegedly disabling vision problems could largely be corrected with a new pair of

7   glasses); *see also Batson*, 359 F.3d at 1193 (under the substantial evidence test, findings must be

8   upheld if supported by inferences reasonably drawn from the record); *Burch*, 400 F.3d at 679

9   (when the evidence will support more than one rational interpretation, the court must defer to the

10  Commissioner's interpretation).) Next, the court is not aware of any binding authority requiring

11  the ALJ to point to more aggressive treatment doctors wanted Plaintiff to complete (before

12  discrediting Plaintiff's symptom claims), and Plaintiff cites none. Finally, the court is similarly

13  unaware of any binding Ninth Circuit precedent on whether narcotics are considered

14  "conservative" treatment, and the parties have cited none. There is an unpublished Ninth Circuit

15  case (cited by the Commissioner) in which the court held that the ALJ gave clear and convincing

16  reasons for discrediting Plaintiff's symptom claims, including the fact that she responded to

17  conservative treatment that involved taking narcotics. *Huizar v. Comm'r of Soc. Sec.*, 428 F.

18  App'x 678, 680 (9th Cir. 2011). Accordingly, this court cannot hold, as a matter of law, that

19  taking narcotics automatically renders treatment "non-conservative." For all of these reasons, the

20  court cannot conclude that the ALJ erred in discrediting Plaintiff's symptom claims based on the

21  conservative nature of his treatment.

22          The ALJ also found that Plaintiff's ability to perform some activities of daily living was

23  inconsistent with his allegations of disabling symptoms. AR 30. The ALJ may consider a

24  claimant's activities that are inconsistent with reported symptoms. *Rollins*, 261 F.3d at 857. If a

25  claimant can spend a substantial part of the day engaged in exertional or non-exertional functions,

26  the ALJ may find these activities inconsistent with the reported disabling symptoms. *Fair*, 885

27  F.2d at 603; *Molina*, 674 F.3d at 1113. "While a claimant need not vegetate in a dark room in

28  order to be eligible for benefits, the ALJ may discount a claimant's symptom testimony when the

1    claimant reports participation in everyday activities indicating capacities that are transferable to a

2    work setting" or when activities "contradict claims of a totally debilitating impairment.'" *Molina*,

3    674 F.3d at 1112-13 (internal quotations and citations omitted).

4         Here, the ALJ found that Plaintiff can engage in activities of daily living that undermine

5    his allegations of disabling functional impairments. AR 30. The ALJ found that: Plaintiff reported

6    no problems with personal care; he did not need reminders to take care of personal needs or

7    grooming or to take medication. He prepared his own meals. He could drive, use public

8    transportation, and get rides. He could go out alone. He shopped in stores and was able to handle

9    finances. He did not need reminders to go places. He could follow spoken and written instructions

10   "ok" and could complete tasks. *Id.* (citing Exs. 5E, 8E). These findings are supported by the

11   record and undermine some of Plaintiff's statements about the disabling nature of his condition.

12   "Although the evidence of [Plaintiff's] daily activities may also admit of an interpretation more

13   favorable to [Plaintiff], the ALJ's interpretation was rational, and '[w]e must uphold the ALJ's

14   decision where the evidence is susceptible to more than one rational interpretation.'" *Burch*, 400

15   F.3d at 680–81. Further, Plaintiff waived any objection to this reason for discrediting his

16   symptom claims by failing to address it in his brief. *See Carmickle v. Comm'r, Soc. Sec. Admin.*,

17   533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (failure to raise issue waives it).

18        Plaintiff also did not address the ALJ's final reason for discrediting his symptom claims—

19   that Plaintiff did not stop working due to disabling symptoms but rather was laid-off. AR 30

20   (citing Ex. 2E). As the Commissioner points out (ECF No. 19 at 10), there is caselaw that

21   suggests that it is proper for an ALJ to consider whether a claimant lost prior jobs because of

22   disabling symptoms (or for other reasons) in assessing their symptom claims. *See, e.g.*, *Drouin v.*

23   *Sullivan*, 966 F.2d 1255, 1258–59 (9th Cir. 1992) (in evaluating symptom claims, ALJ properly

24   considered the fact that the claimant did not lose either of her prior two jobs because of pain).

25   Accordingly, this is another reason the ALJ gave for discrediting Plaintiff's claims of disabling

26   symptoms, and Plaintiff waived any objection to it. *See Carmickle*, 533 F.3d at 1161 n.2.

27        Thus, as discussed above, the ALJ provided clear and convincing reasons supported by

28   substantial evidence for discrediting Plaintiff's symptom claims. And, even if the ALJ had erred

with respect to some of the reasons given for discrediting Plaintiff's symptom claims (which the

court does not find), this would be harmless error, as the ALJ provided other valid reasons for

discrediting Plaintiff's symptom claims (which Plaintiff waived the right to object to). *See*

*Carmickle*, 533 F.3d at 1162-63; *Molina*, 674 F.3d at 1115 ("[S]everal of our cases have held that

an ALJ's error was harmless where the ALJ provided one or more invalid reasons for disbelieving

a claimant's testimony, but also provided valid reasons that were supported by the record.");

*Batson*, 359 F.3d at 1197 (holding that any error the ALJ committed in asserting one

impermissible reason for claimant's lack of credibility did not negate the validity of the ALJ's

ultimate conclusion that the claimant's testimony was not credible).

## III.   CONCLUSION AND RECOMMENDATION

Accordingly, IT IS THEREFORE RECOMMENDED that Plaintiff's Motion for Reversal

and/or Remand (ECF No. 18) be DENIED.

IT IS FURTHER RECOMMENDED that the Commissioner's Cross Motion to Affirm

and Opposition to Plaintiff's Motion for Reversal and/or Remand (ECF Nos. 19, 20) be

GRANTED.

## IV.   NOTICE

This report and recommendation is submitted to the United States district judge assigned

to this case under 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation

may file a written objection supported by points and authorities within fourteen days of being

served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely

objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153,

1157 (9th Cir. 1991).

DATED: October 23, 2019

_____
BRENDA WEKSLER
UNITED STATES MAGISTRATE JUDGE